UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ADA PELT-WASHINGTON,           )
                               )
    Plaintiff,                 )
                               )
vs.                            )
                               )   CASE NO.: 1:05cv163 MP-AK
FRESENIUS MEDICAL CARE AG,     )
FMC HOLDINGS INC,              )
  d/b/a BMA STARKE,            )
                               )
    Defendant.                 )
_____)

## COMPLAINT

Plaintiff, ADA PELT-WASHINGTON ("WASHINGTON"), by and through her undersigned counsel, hereby files her complaint against Defendant, FRESENIUS MEDICAL CARE AG, FMC HOLDINGS INC, d/b/a BMA STARKE ("FRESENIUS"), for violations of Section 42 U.S.C. Section 2000e, *et. seq.*, as amended, and alleges:

### I.    PRELIMINARY STATEMENT

1. The jurisdiction of this Court is invoked under the provisions of. 42 U.S.C. 2000e, *et. seq.*, as amended and 28 U.S.C. Section 1367. The amount in controversy exceeds $75,000.

2. On December 2, 2002, WASHINGTON timely filed an administrative complaint with the Florida Commission of Human Relations ("FCHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination.

SEP 23 PM 3: 20
LT

FILED

Case 1:05-cv-00163-MP-AK   Document 1   Filed 09/23/05   Page 2 of 10

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 2 of 11

3. On June 24, 2004, WASHINGTON filed a Petition for Relief for unlawful employment discrimination with the State of Florida, Division of Administrative Hearings. On April 11, 2005, the State of Florida, Division of Administrative Hearings entered an order closing the file in this matter after receiving WASHINGTON's Notice of Withdrawal.

4. On June 27, 2005, the EEOC mailed to WASHINGTON a Notice of Right to Sue stating that the EEOC was terminating its processing of the charge and that WASHINGTON had the right to sue FRESENIUS in federal or state court within ninety (90) days from receipt of the notice. The notice is presumed to have been received within five (5) days of mailing or on or about July 2, 2005. WASHINGTON's complaint is therefore timely.

5. WASHINGTON has exhausted her administrative remedies and has complied with all conditions precedent to filing this action.

## II. PARTIES

6. WASHINGTON is a citizen of the United States of America and a resident of the State of Florida, and was employed by FRESENIUS during all times relevant. She is a black, Christian woman.

7. BMA Starke is a subsidiary of Fresenius Medical Care Holdings, which is a multinational German medical services corporation with North American headquarters in Massachusetts, doing business in the State of Florida, including Alachua and Bradford counties. and may sue and be sued.

8. .FRESENIUS employs more than one thousand employees in the United States.

## III. FACTS

9. FRESENIUS has violated Section 42 U.S.C. 2000e, *et seq.*, as amended, by discriminating against WASHINGTON in the following ways: 1) by failing to promote her in accord with her experience, service and tenure, thus subjecting her to disparate and intentional discrimination; 2) by creating a hostile working environment permeated with a racial bias, which was anti-African American; 3) by creating a hostile working environment because of WASHINGTON's religious beliefs and habits; 4) by causing WASHINGTON to suffer a nervous breakdown in December 2001 because of the hostile work environment and discriminatory atmosphere under which she worked; 5) by constructively discharging WASHINGTON because of the hostile work environment.

## IV. ISSUES OF MATERIAL FACT

10. WASHINGTON's job classification with FRESENIUS was Patient Care Technician. Her task was to connect and disconnect patients to medical equipment and to care for the patients while they were on the kidney dialysis machine. This involved the initial canulation ("sticking") of the dialysis needle into the patient's vein.

11. WASHINGTON's immediate supervisor was Kim Justice until October 2001. After that time, "Teresa" (WASHINGTON doesn't know her last name) was her immediate supervisor.

12. During all times relevant, Carol McNamara was the area manager for Fresenius facilities in Starke, Lake City and Palatka, which are all in Florida.

13. WASHINGTON had been employed at FRESENIUS of Starke since February 6, 1996.

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 4 of 11

14. WASHINGTON's initial rate of pay was $7.15 per hour, and her last pay rate was $9.94 per hour.

15. WASHINGTON was a full-time patient care technician who, in comparison with other technicians, had worked at FRESENIUS of Starke, Florida, the longest. Only one other person, a part-time patient care technician, Mary Konkel, had worked at FRESENIUS Starke, Florida, longer than WASHINGTON.

16. To her information, WASHINGTON's wage rate was within 45 cents per hour of the lowest paid and least senior full-time patient care technician as of December 2001.

17. After the initial classroom training that WASHINGTON received from FRESENIUS, she had difficulty in obtaining assistance in training while on the kidney dialysis floor. WASHINGTON was given very little assistance in the canulation of the patients assigned to her, while other patient care technicians assisted each other or received assistance from the registered nurse on duty. In essence, despite the seriousness of her responsibilities, she had to learn on her own.

18. As a patient care technician, WASHINGTON was required to keep records of the dialysis process for each patient. The initial records during the day were kept on paper and then transferred to computer at the end of the day. When WASHINGTON started work in 1996, she had no computer experience. Although she asked for training about entering data into the computer, she had to beg for that training each year over the course of her employment with FRESENIUS. Nevertheless, FRESENIUS never gave WASHINGTON the training. Because of this lack of knowledge, WASHINGTON was placed at a disadvantage in comparison to the white patient care technicians who were given adequate and timely training. On more than one

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 5 of 11

occasion, WASHINGTON was told by Justice and the nurses to enter information into the computer. FRESENIUS knew full well that she had not been adequately trained in computer use. When WASHINGTON told Justice or the nurses of the difficulty she was having because of her lack of computer training, WASHINGTON would then be threatened with disciplinary action if she did not comply. Justice and the nurses on the floor would then hold WASHINGTON up to ridicule in front of co-workers and the patients.

19. One of WASHINGTON's duties as a patient care technician was to periodically take responsibility for setting up the dialysis machines prior to the opening of business. It was customary at FRESENIUS Starke that all of the patient care technicians would assist other patient care technicians responsible for the setup prior to the opening of business in the mornings. This assistance was not by rule, but was by custom between the patient care technicians and the nurses. WASHINGTON assisted the other patient care technicians when it was their turns. Whenever it was WASHINGTON's turn to set up between 1996 and late 2000, she would always be alone. Since 2000, only one patient care technician, Dana, out of a total of five (5) technicians, would assist WASHINGTON.

20. From 1996 through December 2001, WASHINGTON would be ridiculed by other employees whenever she did anything wrong or when a patient complained about a painful canulation. Sometimes canulation can be painful, which cannot always be prevented. The ridicule WASHINGTON received about canulation led to some white patients refusing to be served by her. On more than one occasion, white patients refused her services altogether because of her race. The patients made racially biased remarks that FRESENIUS managers heard and ignored.

Case 1:05-cv-00163-MP-AK   Document 1   Filed 09/23/05   Page 6 of 10

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 6 of 11

21. From 1996 through December 2001, various racial comments were made by other employees about WASHINGTON to other employees and to patients. On numerous occasions, she heard the word "nigger" used in reference to her.

22. Between February 1996 and December 2001, other employees used racial stereotyping when referring to WASHINGTON and her family. This included calling her husband a drug dealer. He is a maintenance worker at the University of Florida, and he has no criminal record. Employees would say that she had twelve (12) children. WASHINGTON has two (2) children whom she has supported. WASHINGTON was on public assistance for no more than one year, and that was while she was attending Santa Fe Community College, caring for her children and other members of her family, including a very ill mother, and had no income. It was also the year immediately following WASHINGTON's constructive discharge when WASHINGTON was especially demoralized and depressed as a consequence of FRESENIUS's discrimination against her.

23. Between February 1996 and December 2001, WASHINGTON had made various requests for additional training so that she could learn a variety of things to assist FRESENIUS. FRESENIUS managers said that they did not have time to train her; however, they did train white patient care technicians for those duties.

24. Between February 1996 and December 2001, on numerous occasions WASHINGTON had been subject to overt racial discrimination by patients. In many cases, she would be assigned to white patients who were known to have racial prejudice. This was done in order to embarrass her. She would complain to her supervisors and management about this.

Case 1:05-cv-00163-MP-AK   Document 1   Filed 09/23/05   Page 7 of 10

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 7 of 11

25. Some time during the first six months of WASHINGTON's employment with FRESENIUS, in 1996, one of her children became ill and was diagnosed with a serious disease. She initially tried to take family leave to take care of her child. However, Jenny Searcy, her supervisor at that time, said, "If you take more time off, then you might as well look for another job. Most people find backup care for their kids. You have to find backup care." WASHINGTON knows that white patient care technicians received family leave. Becky Norman received a great deal of leave time when her father was ill. WASHINGTON knows of a nurse who received time to take care of her sick dog. Searcy took off to take care of her sick cat. WASHINGTON was in such fear for her job that she only took one day paid time off to take her child to the physician. WASHINGTON did not know of her rights under the Family and Medical Leave Act ("FMLA"), and FRESENIUS did not comply with its obligations under the FMLA.

26. On at least one occasion, FRESENIUS's vacation calendar was put up and WASHINGTON was not made aware of it for more than one month. By that time, she had very little choice of when to take vacation. She was told by one of her co-workers, "Oh, Ada! Didn't you know it was back there?"

27. In December 2001, WASHINGTON noticed on the vacation calendar that the time she had written down to take off had been whited out. She then filled out a paid time off request and placed it on her supervisor's desk. Her supervisor started playing games with her, stating that she would get the time off only if she would work extra time. Normally, the patient care technicians are required to work every other Saturday. On one occasion, WASHINGTON's supervisor scheduled her to work three Saturdays in a row and when WASHINGTON told her

Case 1:05-cv-00163-MP-AK   Document 1   Filed 09/23/05   Page 8 of 10

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 8 of 11

that she did not wish to work three Saturdays in a row, the supervisor told her that WASHINGTON would be able to get her vacation time during the Christmas holidays if she cooperated.

28. As mentioned above, the patient care technicians are required to work every other Saturday. It would not be unusual for the patient care technicians to trade days so that they could keep private obligations. However, whenever WASHINGTON asked any of the other patient care technicians to trade with her, she was turned down.

29. At her place of work, WASHINGTON found a defamatory publication entitled "Why blacks are inferior," on the floor near the suggestion box.

30. WASHINGTON was frequently asked how she, an African-American, could tell the difference between her pubic hair and the hair on her head.

31. During holiday events, when employees brought in homemade foods, nobody would ever eat any of the food that WASHINGTON prepared.

32. The harassment described in this complaint occurred at least once a week, every week for the almost seven (7) years, that WASHINGTON was employed, with the harassment becoming extremely severe and almost daily for the last two (2) years of her employment.

33. Patients and patients' families were allowed by the staff to threaten WASHINGTON's life, to threaten physical harm, and were allowed to utter offensive racial slurs, all of which contributed to the inability of WASHINGTON to perform her duties as required in her job description.

34. The ultimate facts alleged and entitlement to relief are as listed below:

35. WASHINGTON was constantly harassed, made the butt of racial jokes, and treated in a disparate manner during the nearly seven (7) years in which she worked for FRESENIUS. WASHINGTON was constantly in fear that she would be terminated if she missed any days at work. She was also made a butt of jokes because of her religious believes. Because of the hostile working environment, she had a nervous breakdown in December 2001, when a patient abused her racially and her supervisor and fellow employees failed to protect her. She suffered retaliation when she told her supervisor of the hostile working environment because of her race and her religion. Although she was one of the senior people as a patient care technician, she was never given any promotion, she was never permitted to train for a higher position, and her rate of pay was near that of people who had recently been hired, even though she had better qualifications and more experience.

36. WASHINGTON was discriminated against in violation of Section 42 U.S.C. §2000e, *et. seq.*, as amended, in that FRESENIUS created a hostile work environment infused with racism and bigotry towards her because of her race. Her place of work was permeated with discriminatory intimidation, ridicule, and insult to such a degree that she had a mental breakdown. FRESENIUS, through its supervisors and area managers, knew of this hostile work environment.

37. FRESENIUS's conduct described above evidences that FRESENIUS engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of WASHINGTON.

## V. PRAYER FOR RELIEF

United States District Court, Middle District of Florida, Jacksonville Division
Washington v. Fresenius
Complaint of Employment Discrimination
Page 10 of 11

38. Assume jurisdiction over this action.

39. Award WASHINGTON compensatory damages for pain and suffering and humiliation.

40. Award WASHINGTON such back pay and value for lost employment as may be found by a jury.

41. Award WASHINGTON punitive damages for the egregious actions of management and the complete and intentional disregard for her rights.

42. Award WASHINGTON all costs and attorney's fees incurred in connection with this action.

43. Grant such additional or alternative relief as may appear to this Court to be just and equitable.

44. WASHINGTON demands a jury trial.

Respectfully submitted, 22 Sept 2005

**SAMUEL A. MUTCH, P.A.**
Attorneys for Petitioner

By _[signature]_

Samuel A. Mutch
Florida Bar No. 947342
Laura Church
Florida Bar No.: 858145
Sabina Tomshinsky
Florida Bar No.: 0012188
2114 NW 40th Terrace, Suite A-1
Gainesville, FL 32605
(352) 378-5599 (phone)
(352) 378-3388 (fax)